UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM H. MERRILL,

    Plaintiff,

  v.

SGT. MIKE SCHELL and
CHRIS FELICE,

    Defendants.

11-CV-720(LJV)(LGF)
DECISION AND ORDER

---

  The plaintiff, William H. Merrill, brought this suit under 42 U.S.C. § 1983 alleging the violation of his constitutional rights. More specifically, he claims that the defendants, Mike Schell and Chris Felice, both of them employed by the Seneca County Sheriff's Department, unlawfully used excessive force against him in violation of the Fourth and Fourteenth Amendments to the United States Constitution. For the following reasons, this Court adopts the August 18, 2016 Report and Recommendation ("R&R") of Magistrate Judge Leslie G. Foschio in part and denies the defendants' motion for judgment on the pleadings under Rule 12(c) ("motion to dismiss").

## BACKGROUND

### I. Factual Background

  The following facts are construed in the light most favorable to the plaintiff, who opposes the defendants' motion to dismiss. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997) (citing *Hosp. Bldg. Co. v. Tr. of Rex Hosp.*, 425 U.S. 738, 740 (1976)). On December 11, 2008, Merrill appeared for a child

custody hearing in Seneca County Family Court at the Seneca County Courthouse in Waterloo, New York.  Docket Item 56 at 2.  Felice, a Seneca County Sheriff's Deputy, arrested Merrill in the lobby of the courthouse pursuant to a warrant based on an aggravated harassment charge.  Docket Item 13 at 2.  Felice handcuffed Merrill, who was cooperative during the arrest, and placed him in a nearby patrol vehicle.  Docket Item 56 at 2.  He then awaited the arrival of his co-defendant, Sergeant Schell.  *Id.*

Schell knew Merrill, having encountered him frequently in connection with Merrill's family court issues and complaints.  *See* Docket Item 13 at 3.  In addition, Merrill believes that Felice and Schell were both friends with the mother of Merrill's child and her relatives.  *See* Docket Item 1 at 6.  Indeed, Schell himself says that he asked "what's going on[,] Bill" when Schell arrived because of his familiarity with Merrill's custody problems.  Docket Item 13 at 3.  And Merrill's initial complaint and first amended complaint included claims, later dismissed, that both Schell and Felice had harassed him over the phone and in person many times over the past three years.  *See* Docket Item 1 at 6; Docket Item 11 at 6, 8.  In short, Schell and Felice had dealt with Merrill before; at the very least, they were familiar with one another.

Schell arrived a short time later.  Docket Item 56 at 2.  While Merrill was in custody in the vehicle, Schell pointed his service weapon at Merrill, within a few inches of his temple, and told Merrill to stop seeking custody of his daughter and to pay any amount of child support that his daughter's mother requested.  Docket Item 11 at 2-3.  Merrill alleges that as a result of this incident, he suffers from stress, anxiety, and psychological trauma.  Docket Item 56 at 3.

## II. Procedural Background

Merrill commenced this section 1983 action, pro se, by filing a complaint in the United States District Court for the Northern District of New York. On August 30, 2011, the case was transferred to this Court and was assigned to District Judge Richard J. Arcara. Docket Item 7. On April 24, 2012, the plaintiff filed an amended complaint, Docket Item 10, and on October 29, 2014, Judge Arcara referred this case to Judge Foschio for all pretrial matters, including a report and recommendation on dispositive motions. Docket Item 40.

Merrill moved for appointment of counsel, and Judge Foschio appointed counsel to represent him on November 5, 2014. Docket Item 43. Merrill then filed a second amended complaint on July 17, 2015, asserting two claims of excessive force: one against Felice and Schell for the incident of December 11, 2008, and a second against Schell for an incident in January or February 2009.[1] Docket Item 56. On August 7, 2015, the defendants moved to dismiss the first excessive-force claim. Docket Item 59. On March 7, 2016, this matter was reassigned to the undersigned. Docket Item 67.

On August 18, 2016, Judge Foschio issued his R&R, which recommended denying the defendants' motion to dismiss on excessive-force grounds but granting the motion based on qualified immunity. Docket Item 79. Merrill objected to Judge Foschio's recommendation that the claim be dismissed based on qualified immunity, Docket Item 84, and the defendants objected to Judge Foschio's recommendation to

---

[1] According to Merrill, in early 2009, while Schell was overseeing Merrill's transport from prison to a court appearance, Schell struck Merrill in the mouth with his weapon and broke Merrill's tooth. Schell did not move to dismiss that claim, and so this Court does not address it.

deny the motion to dismiss on the issue of excessive force, Docket Item 86.  This Court heard oral argument on the objections on October 31, 2016, and reserved decision.

## **STANDARDS OF REVIEW**

### I. Review of Report & Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendation" of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### II. Motion to Dismiss

A motion to dismiss under Rule 12(c) is decided under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  When a court decides a motion to dismiss, all well-pleaded allegations are assumed to be true and construed in the non-moving party's favor.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  To survive such a motion, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facial[ly] plausibl[e] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678).  "The issue is not whether a plaintiff will

4

or might ultimately prevail on her claim, but whether she is entitled to offer evidence in support of the allegations in the complaint." *Hamilton*, 128 F.3d at 62.

## DISCUSSION

### I. Excessive Force

Merrill asserts that Schell used excessive force when, unprovoked, Schell pointed his service weapon at Merrill's head and threatened Merrill. *See* Docket Item 89 at 2. He asserts that Felice participated in the assault by arresting Merrill, holding him in the police car until Schell arrived, and failing to intervene. *See* Docket Item 56 at 2-3. The defendants argue in response that the Second Circuit does not recognize a mere threat of force, without physical contact, as actionable under section 1983. *See* Docket Item 86 at 6.

In the R&R, Judge Foschio concluded that Merrill had stated a cognizable excessive-force claim. *See* Docket Item 79 at 10. He found that Schell's alleged use of his gun was "objectively unreasonable" under the circumstances, especially because Merrill already had been arrested, was not resisting, and instead was sitting handcuffed in the patrol car when Schell arrived. *See id.* at 9-10. Acknowledging that the precise issue had not yet been squarely addressed by the Second Circuit, Judge Foschio noted that other circuits had found similar uses of a gun coupled with threats sufficient to support a section 1983 excessive-force claim under the Fourth Amendment. *See id.* at 10. He agreed with the defendants, however, that verbal harassment without significant injury is not actionable under section 1983, and he therefore recommended granting the defendants' motion to dismiss insofar as the claim was based solely on Schell's alleged verbal harassment and threats. *See id.* at 9.

5

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege that (1) while acting under color of state law, (2) the defendants deprived the plaintiff of a right, privilege, or immunity secured to him by the Constitution or federal law. *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The Second Circuit has stated that the Fourth Amendment standard of objective reasonableness applies to police conduct "at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody . . . of the arresting officer." *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989). In assessing reasonableness, the court should carefully consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Courts within the Second Circuit have been reluctant to entertain excessive-force claims without any physical contact. Mere threats or verbal harassment, without any "appreciable injury," generally are not actionable under section 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (citations omitted). A verbal threat, "unaccompanied by any injury[,] no matter how inappropriate, unprofessional, or reprehensible it might seem," does not violate a federally protected right. *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (internal citations omitted). Some courts in the Second Circuit also have held that merely drawing weapons during an arrest or execution of a search warrant does not constitute excessive force as a matter of law. *See Askins v. City of New York*, 2011 WL 1334838, at *3 (S.D.N.Y. Mar.

25, 2011) ("It is not objectively unreasonable for police officers to merely point a gun when executing a search warrant at a private residence.").

Still, whether or not a certain police action—here, a very specific, personal verbal threat backed up by a gun pointed at the arrestee's head—violates that arrestee's Fourth Amendment rights depends on the totality of the circumstances. *See United States v. Maclin*, 2016 WL 3639834, at *2 (W.D.N.Y. July 8, 2016). And some courts— even some courts in the Second Circuit—have recognized that there are times when "verbal threats, combined with the brandishing of the weapon, could be unreasonable and therefore constitute excessive force." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 296 (S.D.N.Y. 2015); *Lilakos v. N.Y.C.*, 2016 WL 5928674, at *6 (E.D.N.Y. Sept. 30, 2016) (denying defendants' motion to dismiss because threatening plaintiff during course of his arrest to not "[expletive] move" and to hurt him with a gun could be unreasonable and constitute excessive force); *Marceline v. Delgado*, 2011 WL 2531081, at *7-9 (D. Conn. June 23, 2011) (using the *Graham* factors to deny summary judgment despite no physical contact when defendant police officer, while off duty, detained plaintiffs at gunpoint for a minor traffic violation).

This Court agrees with Judge Foschio that this case crosses the line and that Merrill has stated a plausible claim. Merrill alleges that Officer Schell drew his weapon, pointed it at Merrill within a few inches of his head, and directed him to stop seeking custody of his daughter and pay child support. Merrill did not resist or try to evade arrest. He did not pose an immediate threat to the safety of officers or others. He was unarmed, handcuffed, and confined in the back of a patrol car. *See* Docket Item 56 at 2. Indeed, only one of the *Graham* factors favors a finding of reasonableness—Merrill

was arrested for a serious crime—but that one factor does not outweigh all the others. *See Graham*, 490 U.S. at 396. And the rationale behind the reasonableness inquiry—allowing police officers to make split-second decisions about the use of force in "tense, uncertain, and rapidly evolving" circumstances—is inapplicable here. *Graham*, 490 U.S. at 396-97.

For the reasons stated above and in the R&R, this Court agrees with Judge Foschio that Schell's alleged actions were objectively unreasonable "in light of the facts and circumstances of the situation [defendants] faced." *See* Docket Item 79 at 9-10 (quoting *Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994)). Unlike the brandishing of weapons found to be reasonable in *Askins*, *supra*, Schell did not point his weapon at Merrill for any legitimate or security reason here. *See* 2011 WL 1334838, at *3. On the contrary, according to Merrill's allegations, Schell's actions were motivated by personal animus, not a tense or dangerous situation calling for proactive police action.

In sum, it is objectively unreasonable and a violation of the Fourth Amendment to draw a weapon and threaten a compliant, unarmed, and handcuffed arrestee, sitting in a confined space, with demands related to a purely personal matter. Under these narrow circumstances, the combined effect of Schell's verbal threat and the pointing of his service weapon at Merrill's head supports a viable section 1983 claim.

## II.   Failure to Intervene

Because Merrill's claim against Schell survives a motion to dismiss, his claim that Felice failed to intervene does as well. It is well established that police officers have an affirmative duty to prevent their fellow officers from violating the constitutional rights of others. *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill v.*

8

*Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). A police officer therefore can be held liable for his failure to intervene if he or she observes the use of excessive force and has sufficient time to act but takes no steps to prevent it. *See id.* Whether an officer had a realistic opportunity to intervene depends on several factors, including the number of officers present, their proximity to the situation, the environment in which they acted, the nature of the assault, and, often most important, the assault's duration. *Id.* at 107. Based on those factors, the question is whether the officer was a "tacit collaborator in the unlawful conduct of another." *Id.* (internal quotation omitted).

Here, Merrill was in Felice's vehicle, with Felice present, when Schell arrived, pulled his gun, and threatened Merrill. Felice was close by and able to observe that Merrill was compliant and not resisting in any way. He held Merrill in his vehicle until Schell arrived, and he had more than enough time to intervene had he chosen to do so. Under these circumstances, Felice was a "tacit collaborator," and the plaintiff's claim against him likewise survives a motion to dismiss. *See id.*

### III.     Qualified Immunity

In their motion to dismiss, the defendants contended that even if Merrill had stated an actionable claim for excessive force, the complaint still should be dismissed because they are entitled to qualified immunity. *See* Docket Item 88 at 9. They argued that pointing a gun at a handcuffed arrestee is not a clearly established Fourth Amendment violation in the Second Circuit and that no uniform rule is clearly foreshadowed by other circuits. *See id.* at 11. Merrill responded that in light of clearly established law, a reasonable officer in the defendants' position would—or at least should—have known that pointing a gun at an arrestee and threatening him in the

9

manner and under the circumstances alleged here was actionable as excessive force under the Fourth Amendment. *See id.* at 9.

Judge Foschio agreed with Schell and Felice. He recommended that the defendants' motion be granted on the basis of qualified immunity:

> [T]he law in the Second Circuit was unclear at the time of the arrest as to whether a police officer's aiming his service weapon at an arrestee's head, mere inches from the temple, *after* the arrestee was handcuffed and restrained inside the police officer's patrol vehicle, and unaccompanied by any physical contact, constituted a Fourth Amendment excessive force violation.

Docket Item 79 at 11-12.

A defendant asserting a qualified-immunity defense on a motion like this one faces a "formidable hurdle" and is "usually not successful." *Barnett v. Mount Vernon Police Dept.*, 523 F. App'x 811, 813 (2d Cir. 2013) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)). That is because a plaintiff opposing a motion to dismiss is entitled to all reasonable inferences from the facts alleged, including those that defeat the qualified-immunity defense. *See Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). But a district court may grant a motion to dismiss based on qualified immunity if the "defense is based on facts appearing on the face of the complaint." *McKenna*, 386 F.3d at 436.

Qualified immunity protects government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Looney v. Black*, 702 F.3d 701, 705-06 (2d Cir. 2012). This objective standard allows government officials to act

independently and without hesitation "where [their] duties legitimately require action in which clearly established rights are not implicated." *Harlow*, 457 U.S. at 819. But a plaintiff will still have a valid claim against a defendant who "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id.*

Qualified-immunity analysis consists of two inquiries: (1) whether the state actor's conduct violated a constitutional right and (2) whether that right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). In some cases involving claims that police officers used excessive force, these two inquiries converge into one: whether a reasonable officer would believe that the force employed in the particular case was lawful. *Cowan ex. rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003). In deciding whether a right was clearly established—the question at issue here—the court must consider whether (1) the law was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit affirmed the rule, and (3) a reasonable defendant would or should have understood from the existing law that the conduct was unlawful. *See Looney*, 702 F.3d at 706. But even if the Supreme Court or Second Circuit has not spoken conclusively on an issue, the law still might be clearly established if other circuits "clearly foreshadow a particular ruling on the issue." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)).

Although the right to be free from excessive force is indeed clearly established, that does not end the inquiry. *See Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000). Courts also should consider whether "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the

facts presented in the case at hand." *Beckles v. City of New York*, 492 F. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In other words, courts should ask whether a reasonable defendant should have known that the specific conduct at issue was unlawful.

In an excessive-force case without any allegations of physical contact, finding a clearly established violation is particularly difficult. Indeed, as Schell and Felice argue, and as several district courts have noted, the Second Circuit has never explicitly recognized an excessive-force claim in the absence of physical contact. *See, e.g.*, *Easton v. N.Y.C.*, 2009 WL 1767725, at *4 n.5 (E.D.N.Y. June 23, 2009) ("The Court acknowledges that other circuits have occasionally recognized excessive-force claims even where no physical contact occurred, such as where officers pointed guns at an arrestee" but "[t]he Second Circuit has never before recognized such a claim."). Further, because of the "uncertainty surrounding this question," some courts have found qualified immunity in cases where the plaintiff alleged only a threat of physical force. *See Snoussi v. Bivona*, 2008 WL 3992157 at *6 (E.D.N.Y. Aug. 22, 2008).

So threats alone, and brandishing weapons alone, do not clearly violate an arrestee's right and might entitle police officers who engage in such conduct to qualified immunity. But this case is different. Indeed, none of the cases finding the defendants entitled to qualified immunity involve the wanton and gratuitous threats and gun pointing alleged here. *See Dunkelberger v. Dunkelberger*, 2015 WL 5730605 at *15 (S.D.N.Y. Sept. 30, 2015) (dismissing an excessive-force claim where officers pointed guns at arrestee while handcuffing and searching him); *Pelt v. City of New York*, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) (dismissing an excessive-force claim alleging

only that officers "threatened to use force to arrest and evict him if he did not leave the premises"); *Easton*, 2009 WL 1767725 at *4 (dismissing an excessive-force claim based solely on allegation that the officer verbally ordered plaintiff to disrobe and "ogled him" during post-arrest search); *Aderonmu v. Heavey*, 2001 WL 77099, at *1-3 (S.D.N.Y. Jan. 26, 2001) (dismissing an excessive-force claim alleging only that officers "demanded by gunpoint" that plaintiff reveal location of drugs during course of apartment search and interrogation).

Here, the plaintiff alleges that one officer watched as the other officer pointed a gun at his head and threatened to shoot him if he continued to pursue custody of his child or did not make court-ordered support payments. Any reasonable officer would know that this conduct constituted gratuitous—and excessive—force. This Court therefore disagrees with Judge Foschio's conclusion that the defendants are entitled to qualified immunity.

Ample case law establishes that Schell's actions far exceeded the boundaries of lawful conduct. In fact, even cases within the Second Circuit have foreshadowed a denial of qualified immunity in comparable circumstances. *See, e.g.*, *Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) (observing that "[Second] Circuit law could very well support [the plaintiff's] claim that a gunpoint death threat issued to a restrained and unresisting arrestee represents excessive force" but dismissing the claim because plaintiff did not provide enough factual support for allegations); *see also Warren v. Williams*, 2006 WL 860998, at *33 (D.Conn. Mar. 31, 2006) (acknowledging the need for officers to show force "to quickly and effectively obtain control over the situation, and . . . ensure . . . safety" but denying summary judgment to the defendants because a jury

13

could find that pointing weapons at handcuffed arrestees, accompanied by verbal threats and the presence of police dogs, constituted excessive force).

Other circuits also have recognized excessive-force claims without physical contact and therefore rejected qualified immunity defenses under circumstances similar to those here. *See Easton*, 2009 WL 1767725, at *4 n.5. For example, the Seventh and Ninth Circuits have found that pointing a gun at a suspect when he or she does not present any significant danger to officers may constitute an unreasonable use of force under the Fourth Amendment. *See Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537-38 (9th Cir. 2010) (denying summary judgment on qualified immunity grounds because questions of fact remained about whether threatening deadly force was reasonable "given the low level" of danger to the officers); *Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) ("While police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger"); *Tekle v. United States*, 511 F.3d 839, 845-47 (9th Cir. 2007) (denying summary judgment on qualified immunity grounds, stating that "[w]e have held since 1984 that pointing a gun at a suspect's head can constitute excessive force in this circuit"); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) (agreeing with the Fifth Circuit that a police officer who brandishes a cocked gun at a suspect has "laid the building blocks for a section 1983 claim" even without physical injury); *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000) (finding that pointing a gun at plaintiff's head, even after the officer realized plaintiff was not the desired suspect, is "out of proportion to any danger" plaintiff could have posed to officers or others); *McDonald v. Haskins*, 966 F.2d 292,

294-95 (7th Cir. 1992) (concluding that pointing a gun at a child and threatening to pull the trigger while conducting a search was "objectively unreasonable").

In recognizing these excessive-force claims, the courts have distinguished the need for an initial show of force that is reasonable under the circumstances from a continued showing of force once the situation is under control. *See, e.g.*, *Binay v. Bettendorf*, 601 F.3d 640, 649-50 (6th Cir. 2010) (distinguishing between the reasonable use of force when conducting a lawful search and the unreasonableness of continued detention at gunpoint long after the search was unavailing). As the Tenth Circuit explained:

> Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.

*Holland ex. Rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001). Such cases suggest a "straightforward rule" that is little more than common sense: police officers "pointing a firearm at a person in a manner that creates a risk of harm incommensurate with any police necessity can amount to a Fourth Amendment violation." *See Stamps v. Town of Framingham*, 813 F.3d 27, 42 (1st Cir. 2016). That alleged violation here—under circumstances suggesting that force was used not for reasons of safety or protection, but for unrelated personal reasons—belie any claim of qualified immunity.

What is more, there are rare instances when a constitutional violation is so obvious that the plaintiff does not need to show analogous cases clearly establishing the constitutional right to deflect a claim of qualified immunity. Indeed, "widespread

15

compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Baird*, 576 F.3d at 345 (quoting *Denius v. Dunlap*, 209 F.3d 944, 951 (7th Cir. 2000)); *see also Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003) (finding that a factually similar case is not necessary when the alleged conduct was so far beyond the bounds of the official's duties that the rationale underlying qualified immunity is inapplicable). As one judge explained:

> [t]he easiest cases don't even arise. There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability.

*United States v. Lanier*, 520 U.S. 259, 271 (1997) (quoting *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)). That hypothetical may be extreme, but it aptly makes the point here: "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under [section] 1983," whether the wrongfulness of his action is established through case law or is apparent on its face. *In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997); *see also Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) ("[U]nless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw.").

No reasonable police officer could possibly have believed that what Merrill has alleged was "legitimately require[d]" by his or her duties. *See Harlow*, 457 U.S. at 819. Such force could not possibly have resulted from some perceived risk or danger. *See*

16

*Holland*, 268 F3d at 1192.  On the contrary, it was unnecessary, gratuitous, and excessive by definition.  And because the plaintiff's allegations must be accepted as true at this stage of the litigation, dismissal is not warranted.

### **CONCLUSION**

For the reasons stated above and in the R&R, this Court agrees with Judge Foschio that Merrill has stated a plausible claim against the defendants for excessive force.  But because pointing a gun at a compliant, handcuffed arrestee and issuing threats for personal reasons unrelated to the arrest is objectively unreasonable under any circumstances, this Court disagrees with Judge Foschio's recommendation that Schell and Felice are entitled to qualified immunity.  The defendants' motion to dismiss therefore is DENIED except with respect to claims based solely on alleged verbal harassment and threats, and the case is referred back to Judge Foschio for further proceedings consistent with this decision.

SO ORDERED.

Dated: August 30, 2017
       Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE